1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LAMAN MARTIN,                              Case No.  2:22-cv-00929-JDP (SS)

12              Plaintiff,

13         v.                                    ORDER

14    KILOLO KIJAKAZI, Acting
      Commissioner of Social Security,
15
                Defendant.
16

17         Plaintiff challenges the final decision of the Commissioner of Social Security

18   ("Commissioner") denying his application for child's insurance benefits ("CIB") under Title II of

19   the Social Security Act.  Both parties have moved for summary judgment.  ECF Nos. 15 & 18.

20   The court denies plaintiff's motion and grants the Commissioner's motion.

21                              **Standard of Review**

22         An Administrative Law Judge's ("ALJ") decision denying an application for disability

23   benefits will be upheld if it is supported by substantial evidence in the record and if the correct

24   legal standards have been applied.  *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1052 (9th

25   Cir. 2006).  "'Substantial evidence' means more than a mere scintilla, but less than a

26   preponderance; it is such relevant evidence as a reasonable person might accept as adequate to

27   support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

28

                                        1

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

On March 30, 2020, plaintiff filed the instant application for CIB, alleging disability beginning December 22, 1964. Administrative Record ("AR") 200-04. After his application was denied initially and upon reconsideration, plaintiff appeared and testified at a hearing before an ALJ. AR 35-74, 122-27, 129-35. On May 19, 2021, the ALJ issued a decision finding plaintiff not disabled at any time prior to December 22, 1986, the date plaintiff attained age 22. AR 15-28. Specifically, the ALJ found:

> 1. Born on December 22, 1964, the claimant had not attained age 22 as of December 22, 1964, the alleged onset date.
>
> * * *
>
> 2. The claimant has not engaged in substantial gainful activity since December 22, 1964, the alleged onset date.

2

1

    3.  Prior to attaining age 22, the claimant had the following severe impairment: borderline intellectual functioning.

2

       * * *

3

    4.  Prior to attaining age 22, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of listing 12.05 in 20 CFR Part 404, Subpart P, Appendix 1.

4

5

       * * *

6

    5.  After careful consideration of the entire record, I find that, prior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant was limited to work with simple 1-2 step instructions.  The claimant could maintain concentration, persistence or pace for simple 1-2 step tasks.  He was unable to interact with public.

7

8

9

10

       * * *

11

    6.  The claimant has no past relevant work.

12

       * * *

13

    7.  The claimant was born on December 22, 1964 and was 18 to 22 years old during the period at issue, which is defined as a younger individual age 18-49.

14

15

    8.  The claimant has a limited education.

16

       * * *

17

    9.  Transferability of job skills is not an issue because the claimant does not have past relevant work.

18

19

    10. Prior to attaining age 22, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

20

21

       * * *

22

    11. The claimant has not been under a disability, as defined in the Social Security Act, at any time prior to December 21 [sic], 1986, the date he attained age 22.

23

24

AR 18-28 (citations to the code of regulations omitted).

25

      Plaintiff requested review by the Appeals Council, which denied the request.  AR 1-6.  He

26

now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

27

28

**Analysis**

In 2016, the SSA adjudicated a prior application under Title XVI and found plaintiff—an adult man in his fifties—disabled and entitled to Supplemental Security Income ("SSI") benefits. AR 111-12.[1]  In a separate application, plaintiff now seeks CIB based on the earnings record of his father.  A claimant is entitled to CIB "on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if," *inter alia*, the claimant shows that he is "under a disability . . . [that] began before he attained the age of 22."  42 U.S.C. § 402(d)(1)(B); 20 C.F.R. § 404.350(a)(5).  The claimant must demonstrate that he has been disabled "*continuously and without interruption* beginning before h[is] twenty-second birthday until the time []he applied for child's disability insurance benefits."  *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996) (emphasis in original).

Plaintiff advances several arguments that can be grouped into two categories: first, that the ALJ applied the wrong standard in assessing the onset dates of his conditions; and second, that the ALJ erroneously discredited his testimony and the testimony of his mother.  *See* ECF No. 15. For the reasons below, I disagree that the ALJ committed reversable error.

**A.  Onset Date of Plaintiff's Disability**

Plaintiff's first set of arguments rests on two purported legal presumptions that the ALJ allegedly should have applied.  He first contests the ALJ's finding at step two that plaintiff had

---

[1] This determination was made after a consultative and medical examination at the initial administrative level, and the record does not contain an administrative hearing or written ALJ decision.  *See* AR 102-12.  According to the corresponding medical evaluation, plaintiff was found to have the following severe medically determinable impairments: organic mental disorders, anxiety disorders, affective disorders.  AR 109-10.  Plaintiff was found to satisfy listing 12.02—organic mental disorders—which requires "[m]edical documentation of a significant cognitive decline from a prior level of functioning in one or more of the cognitive areas" (complex attention, executive function, learning and memory, language, perceptual-motor, or social cognition), and one extreme or two marked limitations in the paragraph B criteria.  AR 110. Of the paragraph B criteria, which have since been amended, the examiner found that plaintiff had marked difficulties in maintaining social function and in maintaining concentration, persistence, or pace; the record does not contain a prior finding that corresponds with the current 12.05(b)(2)(A) functional criteria—"[u]nderstand, remember, or apply information."  AR 110. Because plaintiff had applied only for Title XVI benefits, SSA listed his established onset date as April 30, 2016.  AR 112.  The determination noted that "[n]o RFC/MRFC assessments are associated with this claim."  AR 112.

1    not shown severe medically determinable impairments of "depression, anxiety, and post-

2    traumatic stress disorder" before the age of 22.  *Id.* at 7.  He argues that this finding constitutes

3    error because, under *Chavez v. Bowen*, the ALJ was allegedly required to apply res judicata to the

4    SSA's 2016 finding that plaintiff currently has those impairments.  *Id.* at 9 (citing 844 F.2d 691

5    (9th Cir. 1988); Acquiescence Ruling 97-4(9)).  He also argues that the ALJ failed to adequately

6    justify his selective application of a rebuttable presumption that certain mental impairments can

7    "read . . . backward to age 22."  *Id.* at 7-9 (citing AR 18, 2038-39, 2046-52).  For similar reasons,

8    he then objects to the ALJ's step three and RFC assessments of the paragraph B criteria for listing

9    12.05—intellectual disorders.  *Id.* at 9-14, 19-21.  Finally, he contends that the ALJ should have

10   sought the testimony of a medical expert or advisor to help infer the onset date of his

11   impairments.  *Id.* at 17-19.

12          As an initial matter, plaintiff's reliance on res judicata is misplaced.  "In *Chavez*, [the

13   Ninth Circuit] observed that principles of res judicata apply to administrative decisions regarding

14   disability and impose an obligation on the claimant, in instances where a prior ALJ has made a

15   finding of non-disability, to come forward with evidence of 'changed circumstances' in order to

16   overcome a presumption of continuing non-disability."  *Stubbs-Danielson v. Astrue*, 539 F.3d

17   1169, 1173 (9th Cir. 2008) (quoting 844 F.2d at 693).  The Ninth Circuit also held that "a

18   previous ALJ's findings concerning residual functional capacity, education, and work experience

19   are entitled to some res judicata consideration and such findings cannot be reconsidered by a

20   subsequent judge absent new information not presented to the first judge."  *Id*.  However, since

21   *Chavez*, the Ninth Circuit has clarified that there is no corresponding presumption of continuing

22   disability: "a disability determination must be made 'on a neutral basis with regard to the

23   individual's condition, without any initial inference as to the presence or absence of disability

24   being drawn from the fact that the individual has previously been determined to be disabled.'"

25   *Lambert v. Saul*, 980 F.3d 1266, 1276 (9th Cir. 2020) (quoting 42 U.S.C. § 423(f)).  Even if a

26   prior finding of disability has some res judicata effect on subsequent applications, plaintiff cites

27   no authority that such effect applies in the present context—an adjudication of plaintiff's

28   impairments during an *earlier* unadjudicated period.  Thus, the SSA's 2016 finding that plaintiff

is disabled as of April 2016 has no preclusive effect on the instant claim, which concerns whether plaintiff was disabled prior to December 22, 1986.

Plaintiff's remaining arguments rely on a misunderstanding of a narrow exception to these principles—a rebuttable presumption applied to assessments under listing 12.05, the listing for intellectual disorders.  Listing 12.05 has two sets of criteria—paragraphs A and B—and a showing of either is sufficient to satisfy the listing.  Only Paragraph B is at issue.  It requires the following:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R Part 404, Subpart P, Appendix 1, § 12.05(B).

The third prong of section 12.05(B) is "intended to limit coverage to an innate condition, rather than a condition resulting from disease or accident in adulthood."  *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1062 (C.D. Cal. 2010) (quoting *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007) (internal quotation marks omitted)).  The claimant's burden at this step is relatively light.  He need only show that the impairment began before the age of 22—not that the impairment was

6

1   legally disabling before the age of 22.  Because medical records from the period are often

2   unavailable, and because the severity of intellectual disorders generally is not expected to change

3   significantly over time, the Court of Appeals and district courts in the Ninth Circuit have

4   embraced a rebuttable presumption that "a valid adult IQ score . . . is evidence of impairment

5   during the claimant's developmental stage."  *Id*. at 20 (collecting cases).  Thus, to establish

6   12.05(B), an adult claimant who demonstrates current "significantly subaverage intellectual

7   function" and current "[s]ignificant deficits in adaptive functioning," 20 C.F.R Part 404, Subpart

8   P, Appendix 1, § 12.05, need only provide "some evidence . . . from which the factfinder can

9   infer that the impairment existed before age 22 and is not of recent origin due to a traumatic event

10  or changed circumstance."  *McNeil v. Berryhill*, No. 1:15-CV-01442-AWI-GSA, 2018 WL

11  5603599, at *19 (E.D. Cal. Oct. 29, 2018) (citing *Gomez*, 695 F. Supp. 2d at 1061; *Markle v.*

12  *Barnhart*, 324 F.3d 182, 188-89 (3d Cir. 2003)); *see also J.E. v. Saul*, No. 20-CV-02386-NC,

13  2021 WL 4808589, at *4 (N.D. Cal. July 21, 2021) (holding that the claimant's history of special

14  education coursework and failure to complete high school, in addition to consistently low IQ

15  scores, "support[] the presumption that her disorder manifested before she turned twenty-two,

16  absent evidence she suffered a head injury since turning twenty-two").

17          However, such a minimal showing is not sufficient in a CIB case, in which the claimant

18  has the burden "to establish that the impairment [was] severe enough to preclude substantial

19  gainful activity" before reaching 22.  *Reading v. Mathews*, 542 F.2d 993, 997 (7th Cir. 1976);

20  *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002) (upholding denial of

21  CIB to the claimant whose "mental condition only became severe following trauma associated

22  with his mother's death," which occurred after age of 22).  Although the ALJ may still presume

23  that valid adult IQ scores are evidence of similar scores earlier in life, the CIB claimant has the

24  more difficult task of demonstrating that he had significant adaptive functioning limitations

25  during the period in question.

26          In his step-two findings, the ALJ first concluded that plaintiff's IQ scores support a

27  finding that he had borderline intellectual functioning before age 22.  AR 18.  He then found that

28  "[s]ince 2016 and possibly as early as 2004, the claimant has additional medically determinable

1    impairments related to depression, anxiety, and panic attacks that have been diagnosed at times as

2    major depressive disorder, post-traumatic stress disorder, and anxiety disorders." *Id.* However,

3    because the record contains no medical records or retrospective medical opinions from before

4    2004, when plaintiff was 39, the ALJ found that "there is no medical evidence to support a

5    finding that those types of conditions were medically determinable impairments by age 22." *Id.*

6         At step three, the ALJ noted that plaintiff underwent IQ tests in 2016 and 2020, yeilding

7    full scale IQ scores of 61 and 67, respectively.  AR 19.  Observing that plaintiff's IQ scores were

8    consistent with his low high school grades and "not inconsistent with his overall life history," the

9    ALJ concluded that plaintiff satisfied 12.05(B)(1) and (3).  AR 19-20.  However, he then found

10   that plaintiff did not satisfy 12.05(B)(2) because the evidence did not support a finding of "two

11   marked impairments or one extreme impairment by the age of 22."  AR 21.  The ALJ stressed

12   that plaintiff had not met his burden and noted the "paucity of facts during the relevant period of

13   time."  AR 20.  The ALJ found that the evidence could support only moderate limitations in each

14   of the four categories of adaptive functioning (often referred to as the "paragraph B" criteria).

15   AR 21.  The ALJ also noted that the possibly late onset—or gradual worsening—of plaintiff's

16   other mental impairments made it impossible to know whether plaintiff's current limitations had

17   manifested before he was 22.  AR 20.

18        The record contains no retrospective diagnoses or medical opinions.  The earliest medical

19   evidence comes from October 2004, when a medical provider opined that plaintiff "was unable to

20   work . . . [due to] symptoms of depression and anxiety related to post traumatic stress disorder."

21   AR 24.  The ALJ appropriately found this opinion unpersuasive because it was "based on the

22   claimant's current functioning when he was 39 years old" and did "not provide opinion as to the

23   period at issue."  AR 24-25; *see Lindstrom v. Kijakazi*, No. 21-16533, 2022 WL 17352191, at *2

24   (9th Cir. Dec. 1, 2022) (holding that the ALJ was not required to credit the opinions of examining

25   physicians who "examined [the claimant] after the insured period and [who] failed to provide any

26   retrospective diagnoses").

27        In the absence of any contemporary medical records or retrospective medical diagnoses,

28   the only sources of evidence in the record are plaintiff's high school transcript and earnings

record, testimony from plaintiff and his mother, and reports that plaintiff provided to medical

providers and SSA consultants beginning in 2010.  AR 20.  Plaintiff's high school records show

that he received failing grades in nearly every class and that he had issues with attendance.

AR 241-43.  His earnings record reflects intermittent work activity beginning in 1983, none of

which constituted substantial gainful activity.  AR 205-07, 244-46.  Plaintiff's testimony and self-

reports indicate violence and abuse from his father and brother throughout his childhood.  AR

2039.  He told examiners that he experienced depression and panic attacks as early as 12, and he

remembered being told that he had learning disabilities of "dyscalculia and dyslexia."  AR 43-45,

51.  As discussed further below, the ALJ did not fully credit these claims because of plaintiff's

severe memory issues and the remoteness in time.  AR 20.  Plaintiff's mother told consultative

examiners that plaintiff struggled with communication and required prompting to clean up after

himself and do various chores, but that he had been able to dress, bathe, and feed himself.  AR

1336-38.  She also noted that he "struggled to follow a recipe and didn't know how to accurately

measure ingredients."  AR 1338.

From this, the ALJ found evidence to support moderate limitations across all four of the

paragraph B criteria.  AR 21.  In regards to interacting with others, the ALJ weighed plaintiff's

apparent deficits against testimony that he had been able to have children, hold certain jobs, and

go into public places.  AR 21.  For the purpose of the RFC analysis, he explained that plaintiff's

moderate limitations were "accommodated [in the RFC] by the restriction [to] no public

interaction."  AR 21.  For the remaining three categories—adapting and managing oneself;

concentrating, persisting, or maintaining pace; and understanding, remembering, or applying

information—the ALJ similarly weighed plaintiff's low IQ and high school record against

evidence that he had held various short-term jobs, that he could drive a car and care for children

in some capacity, and that he had been able to handle his essential activities of daily living—such

as dressing and feeding himself—without prompting or assistance.  AR 21.  These moderate

limitations were "accommodated by the restriction to simple 1-2 step tasks."  AR 21.

Plaintiff argues that the ALJ erred by "read[ing] the recent FSIQ scores backward to age

22" while refusing to do the same for his other limitations and diagnoses.  ECF No. 15 at 6-10,

19-22.  He contends that the evidence supports a finding of "panic attacks and depression since childhood," and he argues that the ALJ's "requirement of 'diagnosis by an acceptable medical source by age 22' does not exist." *Id.* at 8 (quoting AR 18 and citing SSR 18-1p).  Last, he argues that under SSR 18-1p, the ALJ should have appointed a medical expert to provide a retroactive medical opinion. *Id.* at 17-19.  Other than these legal objections—and his claims regarding the ALJ's treatment of lay testimony, *see infra*—his argument consists largely of challenges to the way that the ALJ weighed the evidence at step three and in the RFC. *Id.* at 9-13 (arguing that "the decision's listing evaluation is simply improper" and providing an alternative analysis "that proceeds as if, instead, it were proper in its basic approach"), 17-23.

Plaintiff's arguments are unavailing.  The ALJ's decision is consistent with case law, logically sound, and supported by substantial evidence.  As the ALJ's decision explains, the only applicable presumption is that "full scale IQ scores are generally consistent over one's adult lifetime," absent evidence of a later onset date. *See* AR 24.  To prove his entitlement to CIB, plaintiff retains the burden of establishing all other aspects of his allegedly disabling conditions, including satisfaction of the 12.05(B)(2) criteria and establishment of other medically determinable impairments. *See* 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."); SSR 18-1p, Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims ("The date that the claimant first met the statutory definition of disability must be supported by the medical and other evidence and be consistent with the nature of the impairment(s).").  Although SSR 18-1p allows ALJs to consider "non-medical sources such as the claimant's family, friends, or former employers . . . [to] infer the date that the claimant first met the statutory definition," such guidance does not relieve claimants of their burden to provide "specific medical evidence . . . [of] when he or she first met the statutory definition of disability." SSR 18-1p(I)(B) & (I)(B)(2).  Typically, when contemporaneous medical records are not available, a claimant will discharge his or her burden by providing a retrospective diagnosis or medical opinion. *Cf. Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1461 (9th Cir. 1995)

1   ("The claimant may establish such continuous disabling severity by means of a retrospective

2   diagnosis.").  No such retrospective medical opinion exists in the record here, and plaintiff has

3   failed to meet his burden.

4          Plaintiff argues that the ALJ's duty to develop the record includes a duty to appoint a

5   medical expert to help infer an onset date.  ECF No. 15 at 17-19.  Under earlier regulations, ALJs

6   were required to appoint medical experts to infer onset dates in the face of ambiguous medical

7   evidence.  *See* SSR 83-20, PPS-100, Titles II and XVI: Onset Of Disability; *DeLorme v. Sullivan*,

8   924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite

9   concerning the onset date and medical inferences need to be made, SSR 83-20 requires the

10  administrative law judge to call upon the services of a medical advisor and to obtain all evidence

11  which is available to make the determination.").  But in 2018, these regulations were rescinded

12  and replaced by SSR 18-1p, which "clarifies that an [ALJ] may, but is not required to, call upon

13  the services of a medical expert."  SSR 18-1p(I)(B)(2) ("The decision to call on the services of an

14  ME is always at the ALJ's discretion.").  Although the ALJ might have chosen to call upon the

15  services of a medical expert, his failure to do so does not constitute reversable legal error.  *See*

16  *Frederick C. v. Saul*, No. 8:20-CV-00018-KES, 2020 WL 6135073, at *4 (C.D. Cal. Oct. 16,

17  2020) ("Plaintiff has failed to demonstrate legal error by the ALJ.  SSR 18-01p expressly

18  establishes that ALJs are never required to appoint an ME to ascertain the onset date of

19  symptoms.").

20         Plaintiff's remaining arguments ask the court to infringe upon the ALJ's discretion.  To

21  the extent plaintiff argues that a finding of severe borderline intellectual disorder logically entails

22  greater-than-moderate limitations in adaptive functioning, this argument is without merit.  As the

23  ALJ explained, such an approach would render 12.05(B)(2) a nullity.  *See* AR 26; *cf. Nash v.*

24  *Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020) (upholding

25  the ALJ's findings of only mild or moderate limitations in adaptive functioning despite findings

26  that the claimant had a full-scale IQ score below 70 and a history of poor grades in school).

27  Similarly, his contention that the RFC is not supported by adequate evidence is belied by his own

28  acknowledgement that the "record is as complete as it is likely to get, aside from further medical

11

1    opinion.” ECF No. 15 at 21-23.  “[T]he ALJ is not required to include all possible limitations in

2    their assessment, only limitations the ALJ found credible and supported by substantial evidence

3    in the record.”  *Lindstrom*, 2022 WL 17352191, at *2 (citing *Bayliss v. Barnhart*, 427 F.3d 1211,

4    1217 (9th Cir. 2005)).  Plaintiff has not shown that the ALJ’s interpretation of the evidence was

5    irrational or incomplete.  *See Burch v. Barnhart*, 400 F.3d at 679 (9th Cir. 2005) (“Where

6    evidence is susceptible to more than one rational interpretation, it is the ALJ’s conclusion that

7    must be upheld.”); *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2017) (“As we cannot say

8    that the ALJ’s interpretation of the available evidence was not rational, the ALJ’s conclusions

9    were supported by substantial evidence.”).

10        **B.  Testimonial Evidence**

11        Plaintiff argues that the ALJ erred in discrediting his testimony and giving only selective

12    weight to that of his mother.  ECF No. 15 at 14-17.  As an initial matter, the ALJ substantially

13    credited much of this testimony, relying heavily on plaintiff’s and his mother’s statements at step

14    three and in the RFC analysis.  However, as the ALJ noted, plaintiff’s mother “had difficulty

15    recalling details of the claimant’[s] history,” AR 20, and her limited testimony appears to have

16    been accounted for in the decision.  For instance, plaintiff contends that the decision neglected

17    testimony that plaintiff “had ‘learning disabilities’ while he was growing up,” that he struggled

18    with “problem solving and sought advice from Mrs. Martin,” that he “could only follow

19    directions given to him one at a time,” and that he “struggled to connect with other children.”

20    ECF No. 15 at 16 (quoting AR 1336-38).  Contrary to plaintiff’s contention, such testimony was

21    accounted for by the ALJ’s limitations to simple 1-2-step tasks and situations with no public

22    interaction.

23        With respect to his own testimony, plaintiff argues that the ALJ failed to provide the

24    requisite clear and convincing reasons for finding that his “statements concerning the intensity,

25    persistence and limiting effects of these symptoms are not entirely consistent with the medical

26    evidence and other evidence in the record.”  AR 23; *see* ECF No. 15 at 14.  But the ALJ

27    explained that plaintiff’s testimony “at the age of 56 is not very persuasive for how he was

28    functioning from high school through the age of 22,” both because “it can be difficult to

12

1    accurately recall events that happened over 30 years ago" and because "his testing at the age of 55

2    revealed an extremely low working memory in the first percentile."  AR 20 (citing AR 1345).

3    The ALJ further noted that plaintiff's allegations of "depression, anxiety[,] mood instability," and

4    other "disabling cognitive deficits during the period at issue" were not supported by any medical

5    evidence from the period or in reference to the period.  AR 22-23.  Taken together, these provide

6    clear and convincing reasons for disregarding such vague allegations of impairments.  Although

7    the ALJ cannot "'reject a claimant's subjective complaints based *solely* on a lack of medical

8    evidence to *fully corroborate* the alleged severity of pain,' . . . the ALJ may indeed weigh

9    [inconsistent or absent medical evidence] as undercutting such testimony."  *Smartt v. Kijakazi*, 53

10   F.4th 489, 498 (9th Cir. 2022) (quoting *Burch*, 400 F.3d at 680 (emphasis added by *Smartt*

11   court)); *see also Thomas v. Barnhart*, 278 F.3d 947, 950 (9th Cir. 2002) (holding that an ALJ

12   appropriately discounted testimony after finding "no objective medical evidence to support [the

13   claimant's] descriptions of her pain and limitations" and "that [the claimant] was able to perform

14   various household chores").

15          Based on the foregoing, I find the ALJ's decision to be supported by substantial evidence

16   in the administrative record and free from reversable legal error.

17          Accordingly, it is hereby ORDERED that:

18          1.  Plaintiff's motion for summary judgment, ECF No. 15, is denied.

19          2.  The Commissioner's cross-motion for summary judgment, ECF No. 18, is granted.

20          3.  The decision of the Commissioner of Social Security is affirmed.

21          4.  The Clerk of Court is directed to enter judgment in the Commissioner's favor and

22   against plaintiff.

23
24   IT IS SO ORDERED.

25   Dated:    August 30, 2023

26                                                                    JEREMY D. PETERSON
                                                                      UNITED STATES MAGISTRATE JUDGE
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28